# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>             Plaintiff,<br><br>vs.<br><br>GEORGE LANE,<br><br>             Defendant. | **CASE NO. 07-CR-00835-H**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO SUPPRESS** |

On August 15, 2007, a federal grand jury in the Southern District of California returned a one-count Superseding Indictment charging George Lane ("Lane") and John Alan Carman ("Carman") with Conspiracy to Kidnap a Person in a Foreign Country, in violation of 18 U.S.C. § 956. (Doc. No. 36.) On August 20, 2007, Lane was arraigned on the Superseding Indictment and entered a plea of not guilty. On the same date, the Court severed Lane and Carman for trial because Carman had been charged and arrested earlier and a trial date was already set. (Doc. No. 39.) Carman's trial began on September 19, 2007 and the jury returned a guilty verdict against Carman on September 26, 2007. (Doc. No. 86.) The Court sentenced Carman on April 7, 2008. (Doc. No. 125.)

Lane's trial was scheduled to begin on May 5, 2009. On April 7, 2009, Lane filed a

1 motion in limine to exclude evidence of co-conspirator statements and alternatively to admit
2 evidence to impeach co-defendant Carman. (Doc. No. 183.) On April 9, 2009, the
3 Government filed a motion to admit co-conspirator statements, emails found on Carman's
4 computer, and recorded calls between Carman and Fernandez without Fernandez. (Doc. No.
5 184.) The Government filed a response in opposition to Lane's motion in limine on April 20,
6 2009. (Doc. No. 185.) Defendant filed a response in opposition to the Government's motion
7 on April 22, 2009. (Doc. No. 186.) The Government and Defendant filed replies on April 24,
8 2009. (Doc. Nos. 187 & 188.)[1]

9 The Court held a hearing on the matter on April 27, 2009. Joseph S. Green appeared
10 on behalf of the United States. Martha M. Hall appeared on behalf of Defendant Lane. The
11 Court continued the hearing and held a status conference on July 8, 2009. At the status
12 conference the Court scheduled the continued evidentiary motion hearing for July 27, 2009 and
13 requested additional briefing from the parties regarding the admissibility of statements of
14 Fernandez. (Doc. No. 221.) The Government filed its supplemental briefing on July 13, 2009.
15 (Doc. No. 222.) Defendant filed his response to the Government's supplemental briefing on
16 July 22, 2009. (Doc. No. 223.) At the hearing held on July 27, 2009, Joseph Green and Peter
17 Mazza appeared on behalf of the United States. Martha M. Hall appeared on behalf of
18 Defendant Lane.

19 For the reasons set forth below, the Court denies Defendant Lane's motion to suppress
20 co-conspirator statements, grants Defendant Lane's motion to admit evidence to impeach,
21 grants the United States' motion to admit co-conspirator statements, grants the United States'
22 motion to admit emails, and grants in part and denies in part the United States' motion to admit
23 Fernandez's statements on recorded phone calls without calling Fernandez at trial.

## **Background**

25 This case concerns an alleged conspiracy between Defendant Lane and John Carman
26 to kidnap Lane's ex-girlfriend Kristi McLean while she was vacationing in Mexico.
27

28 [1]Close to the time of trial, the Government agreed to a continuance of the trial because it found additional boxes of documents that it might have to produce under Brady.

According to Lane, he met Kristi sometime in 2002 and they dated for approximately two and a half years. Their relationship ended in 2004, although they dated on and off during the Spring of 2005. In 2006 and 2007, Kristi had no contact with Lane. Lane left San Diego in 2006 and moved to a small town in rural Kentucky and worked for Winston Morris.

Eloy Fernandez, a government informant, contacted the FBI in Yuma, Arizona on February 22, 2007 to report the alleged plot to kidnap Kristi. Fernandez told the FBI that Carman wanted Fernandez to kidnap Kristi while she was on vacation in Mexico and to hold her until her parents paid $1 million in ransom money to Carman. According to Fernandez, Carman was hired by and conspiring along with Kristi's parents and her boyfriend/husband to kidnap Kristi to teach her a lesson because Kristi was allegedly involved in drug use and a divorce/custody battle. Fernandez previously worked as a source for the FBI and was indicted in 1996 during his work as a source when he failed a polygraph examination and was subsequently found guilty for false statements. The FBI closed Fernandez as a source for being unreliable and for lack of credibility.

Lane provided statements to the Government on three occasions in connection with this case. On April 17 and 19, 2007, Lane spoke with Special Agents in Kentucky and on August 17, 2007, Lane was interviewed post-arrest by Special Agents in San Diego. Lane provided a written statement to agents on April 19, 2009. Lane wrote, in part:

> I was originally very forthcoming with investigators regarding conversations I had with John concerning 'kidnaping' Kristi. I did, however, tell Agents . . . that I never told John I wanted Kristi 'kidnaped' or asked him to do so. This is not accurate.
>
> The discussions regarding 'kidnaping' Kristi started when I brought it up in an unrelated conversation. During this conversation John an[d] I were discussing current events, including an extortion/kidnaping case in the news. I said it would be nice if that happened to Kristi and John and I began discussing kidnaping Kristi in this and subsequent conversations. I viewed these conversations as hypothetical and fantasy. I did not believe John had the

1   capacity to make this happen.

2   10 days before it was texted we 'had Kristi' I told him to 'back out of it'

3   because I never meant to have her kidnaped.  I agree to this statement.

4 (Doc. No. 184 at 6.)

5 The Government seeks to prove a conspiracy between Lane and Carman to kidnap Kristi in Mexico.  In order to do so, the Government seeks the admission of Carman's statements in emails and recorded phone calls about the kidnaping against Lane at trial as co-conspirator statements and Defendant moves to exclude Carman's statements as hearsay.  The Government also seeks the admission of emails found on Carman's computer and three recorded phone calls between Carman and Fernandez without testimony from Fernandez.  The Government agreed to the suppression of evidence obtained from Lane's computer and home.  (Doc. No. 182 at 4-5.)

**Discussion**

**A.  Co-Conspirator Statements**

Lane seeks to exclude and the Government seeks to admit statements by Carman made to Fernandez during three recorded telephone calls, statements made by Carman to Eloy Fernandez and Lane in emails, and Carman's statements to Lane as recounted by Lane during his three interviews.  Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."  Before admitting a coconspirator statement under Rule 801(d)(2)(E), the court must determine by a preponderance of the evidence that "there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy."  Bourjaily v. United States, 483 U.S. 171, 175 (1987).  To be "in furtherance," the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy.  United States v. Larson, 460 F.3d 1200, 1211 (9th Cir. 2006).

In determining the preliminary question of whether to admit co-conspirator statements, the court "is not bound by the rules of evidence except those with respect to privileges."  Fed.

R. Evid. 104(a).  "Although co-conspirator hearsay statements may be used to prove the preliminary facts of the conspiracy and defendant's involvement in it, the government cannot rely solely on those statements: there must be evidence, beyond the statements, to demonstrate by a preponderance of the evidence the conspiracy and defendant's connection to it." United States v. Tamez, 941 F.2d 770, 774-75 (9th Cir. 1991).   However, "[e]vidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy." United States v. Silverman, 861 F.2d 571, 578 (9th Cir. 1988).

      The Court concludes that when viewed in the light of the co-conspirator's statements, the evidence presented establishes by a preponderance of the evidence that there was a conspiracy involving Carman and Lane to kidnap Kristi and that the statements offered were made during the course and in furtherance of the conspiracy. Id. In Lane's written statement, he admits that he brought up the idea of kidnaping Kristi to Carman.  Lane, on January 24, 2007, emailed a picture of Kristi with a man standing in front of a helicopter to Carman. Carman forwarded the picture to Fernandez and later explained that the "ex-boyfriend" said that Kristi would be traveling to Mexico with a helicopter pilot. In the interviews with agents, Lane said that he sent photographs of himself, Kristi and her two sons on vacation in Mexico to Carman over the internet so that Carman could forward the pictures to his contact in Mexico.  Lane also emailed reservation information on the hotel Kristi would be staying at to Carman so that Carman could send the information to his contact in Mexico.  An email from Carman to Fernandez was found on Carman's computer containing the hotel reservation information. Lane also admitted in the interviews that he told Carman to plant drugs in Kristi's hotel room, which Carman later passed along to Fernandez. Lane admitted that he told Carman he could keep any ransom paid by Kristi's parents. Carman stated in an email to Fernandez that they would each receive $500,000.  Lane's statements and his conduct of emailing photographs, hotel information, and discussing ransom money are certainly not innocent and consistent with Lane's unawareness of the conspiracy. Id. at 578-79 (finding evidence that

1  defendant drove sister to airport on one occasion insufficient to corroborate hearsay co-
2  conspirator statements because merely showed defendant associated with a member of
3  conspiracy). Lane did much more than merely associate with Carman.

4        Lane's admissions coupled with Carman's co-conspirator statements and the emails
5  between Lane and Carman containing photographs of Kristi and her hotel information establish
6  by a preponderance of the evidence that Lane and Carman conspired to kidnap Kristi in
7  Mexico, Lane knew about the conspiracy, and Lane participated in the conspiracy.
8  Furthermore, Carman's statements to Fernandez and Lane were in furtherance of the
9  conspiracy as they dealt with identifying the potential victim, giving locating information on
10 where the victim would be vacationing, discussing ransom payout and distribution, and
11 discussing the best course of action to take with Kristi's children during the kidnaping. These
12 statements involve common objectives of the conspiracy and setting up transactions integral
13 to the conspiracy. Larson, 460 F.3d at 1211. Accordingly, the Court grants the Government's
14 motion to admit Carman's co-conspirator statements that were made during the course and in
15 furtherance of the conspiracy under Rule 801(d)(2)(E) and denies Defendant Lane's motion
16 to exclude such statements.

17       Lane requests that if the Court allows the Government to introduce Carman's
18 statements, Lane be permitted to impeach Carman on his statements and generally attack his
19 credibility pursuant to Federal Rule of Evidence 806. (Doc. No. 183 at 7.) Rule 806 provides:

20       When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or
21       (E), has been admitted in evidence, the credibility of the declarant may be
22       attacked, and if attacked may be supported, by any evidence which would be
23       admissible for those purposes if declarant had testified as a witness. Evidence
24       of a statement or conduct by the declarant at any time, inconsistent with the
25       declarant's hearsay statement, is not subject to any requirement that the
26       declarant may have been afforded an opportunity to deny or explain. If the party
27       against whom a hearsay statement has been admitted calls the declarant as a
28       witness, the party is entitled to examine the declarant on the statement as if

1       under cross-examination.

2  Lane seeks to impeach Carman through introduction of prior bad acts under Rule 404(b),

3  inconsistent statements under Rule 613, criminal convictions under Rule 609, and character

4  evidence under Rule 608. (Id. at 8.) The Government has no objection to Lane impeaching

5  Carman's statements. (Doc. No. 185 at 4.) Accordingly, the Court grants Lane's request to

6  impeach Carman's statements pursuant to Rule 806.

7  **B. Emails from Carman's Computer**

8       The Government seeks to admit at trial emails found on Carman's computer that were

9  introduced during Carman's trial. (Doc. No. 184 at 14.) The Government contends that

10 Carman's statements in the emails are admissible as co-conspirator statements as discussed

11 above and that the foundation and authenticity of the emails cannot be seriously disputed by

12 Lane. (Id.) Lane seeks to exclude these emails on the grounds that they contain inadmissible

13 hearsay, but does not dispute the foundation or authenticity of the emails. (Doc. No. 186 at

14 6-7.)

15      As the Court concludes that Carman's statements are admissible as co-conspirator

16 statements under Rule 801(d)(2)(E), Lane's argument that the statements are hearsay and are

17 thus inadmissible fails. The only issues remaining concern the foundation and authenticity of

18 the emails. The Government intends to introduce the emails through Regional Computer

19 Forensic Examiner Tim Hamon, who examined Carman's computer and testified at Carman's

20 trial. The Court previously ruled that the emails were admissible against Carman. The Court

21 concludes that the emails are admissible against Lane.

22      Federal Rule of Evidence 901(a) provides that authentication or identification "is

23 satisfied by evidence sufficient to support a finding that the matter in question is what its

24 proponent claims." Rule 901 allows the admission of evidence "if sufficient proof has been

25 introduced so that a reasonable juror could find in favor of authenticity or identification."

26 United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000). The proponent of the evidence need

27 only make a prima facie showing of authenticity under Rule 901. United States v. Blackwood,

28 878 F.2d 1200, 1202 (9th Cir. 1989). Rule 901(b)(4) provides that evidence may be

1  authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive
2  characteristics, taken in conjunction with other circumstances."

3  Here, the Government has offered evidence sufficient to support a finding that
4  Carman's emails are what the Government claims. Lane admitted to agents during the
5  interviews that he had emailed Carman, including emails containing photographs of Kristi and
6  hotel information. Hotel information and photographs were found in emails from Carman to
7  Fernandez on Carman's computer. Carman states in a telephone call with Fernandez that he
8  had emailed a picture of Kristi to Fernandez. Carman's email address,
9  johncarman@earthlink.net is listed has having subscriber information identifying John Carman
10 with an address and telephone number that match the address and telephone number listed on
11 Carman's business website for "Carman Investigations." Carman's business website contains
12 an "Email" button allowing visitors to email John Carman, the owner/manager of "Carman
13 Investigations" and lists johncarman@earthlink.net as the email address, which matches the
14 email address found on the emails obtained by the Government. The Government has made
15 a prima facie showing of authenticity as this evidence is sufficient to allow a reasonable juror
16 to find that the emails are what the proponent says they are. Accordingly, the Court grants the
17 Government's motion to admit emails from Carman's computer containing Carman's co-
18 conspirator statements.

19 **C. Recorded Phone Calls in Their Entirety without Fernandez Testifying**

20 The Government seeks to admit three recorded telephone calls between Carman and
21 Fernandez, including statements made by Fernandez, and one voicemail message from Carman
22 to Fernandez. (Doc. No. 184 at 19-10.) The Court concludes that Carman's statements are
23 admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E). Fernandez's statements
24 are clearly not admissible as co-conspirator statements, as Fernandez acted as an informant for
25 the Government and was not a co-conspirator of Carman or Lane. Fed. R. Evid. 801(d)(2)(E).
26 The Government contends that Fernandez's statements should also be admitted without calling
27 Fernandez at trial because his statements are offered for context, not truth, and alternatively
28 constitute adoptive admissions of Carman and are therefore not hearsay. (Doc. No. 184 at 20.)

Defendant argues that because Carman's statements are hearsay and inadmissible, so to are Fernandez's statements giving context to that hearsay. (Doc. No. 186 at 7.)

The Government contends that Fernandez's statements should be admitted to provide context to Carman's admissible co-conspirator statements. Informant's statements are admissible to provide context for a declarant's admissible replies in taped conversations. See United States v. Valerio, 441 F.3d 837, 844 (9th Cir. 2006) (holding district court did not abuse discretion in ruling that audiotape containing informant's statements was admissible subject to an admonition that it could only be used to give context to defendant's admissions); United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985) (noting informant's statements admitted not for their truth, but to enable the jury to understand coconspirator's taped statements); see also United States v. Nettles, 476 F.3d 508 (7th Cir. 2007); United States v. Hansen, 434 F.3d 92 (1st Cir. 2006). "The Confrontation Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 (2004). Fernandez's statements are clearly testimonial, as they were "made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." Melendez-Diaz v. Massachusetts, – U.S. –, 129 S.Ct. 2527, 2532 (2009) (citing Crawford, 541 U.S. at 52). A limiting instruction is "the appropriate way to limit the jury's use of that evidence in a manner consistent with the Confrontation Clause." Tennessee v. Street, 471 U.S. 409, 417 (1985). Fernandez's statements thus may be admitted not to prove the truth of the matter asserted, but to provide context to the admissible co-conspirator statements of Carman, subject to a limiting instruction.

However, the Court concludes that under the circumstances of this case, some of Fernandez's statements should be excluded under Rule 403. Federal Rule of Evidence 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Government seeks to admit the out of court

statements of both Carman and Fernandez without calling either at trial. Although the Government seeks to use all of Fernandez's statements to provide context, admission of all of Fernandez's statements without Fernandez, the Government's witness whose reliability and credibility were questioned by the FBI, available for cross-examination unfairly prejudices Lane. There is the distinct danger in this case that the jury may consider Fernandez's statements for the truth of the matter asserted, such as that Carman actually sent Fernandez photographs of Kristi and her children, that the agreed upon ransom was $500,000, that the plan was to have Kristi kidnaped at the beach in Mexico and for Fernandez to grab her kids, and that Fernandez was not acting as a law enforcement officer. (See, e.g., Doc. No. 222, Ex. A at 6, 9, 15, 39, 43, 44, 45, 47, 54, 58.) Unlike in Valerio, the Government seeks to provide context to an unavailable declarant's statements not subject to cross examination, and there is no other evidence to prove the truth of the matters asserted by Fernandez in some of his statements to Carman. See Valerio, 441 F.3d at 844 (noting that informant's statements were only to give context to what the defendant on trial had said in an audiotape and that a probation officer's testimony would be used to prove the fact that the informant was a felon). A limiting instruction may not go far enough to cure this unfair prejudice, as Lane would not have an opportunity exercise his Sixth Amendment right to cross-examine the witness against him about these testimonial, hearsay statements. See Melendez-Diaz, 129 S.Ct. at 2531.

This is particularly a concern in this case, where the following information about Fernandez was revealed during cross-examination at Carman's trial:

- Fernandez was deported in September 2006, and returned illegally in May 2007;
- Fernandez lived in the United States for many years without papers;
- Fernandez registered to vote when he lived in the United States illegally in the 1980s;
- Fernandez has made $300,000 or so from his work as an informant;
- Fernandez knows from past experience that if he brings the Government a big case, he could get the right to stay in the United States legally;

- Fernandez was convicted for framing a Customs officer;
- Fernandez failed to pay taxes on reward money he received for being an informant;
- Fernandez worked as an informant with 38 different agents over 20 years;
- Fernandez was angry about an unfulfilled promise by an Assistant U.S. Attorney to get him a visa, and so he retaliated against the Government by framing a couple of Government agents;
- Fernandez tried to become an informant for the Customs Service starting after his deportation in 2006 in order to gain legal status in the United States;
- Fernandez received a deferred prosecution agreement from the Government when he lied to an agent to obtain a visa for someone else;
- A Government agent questioned Fernandez's credibility as a witness.

(Full Transcript of Fernandez's testimony available at Doc. No. 97.)

This information goes to Fernandez's credibility and believability. As the Supreme Court in Melendez-Diaz states:

> "To be sure, the Clause's ultimate goal is to ensure reliability of evidence , but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. ... Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

129 S.Ct. at 2536 (quoting Crawford, 541 U.S. at 61-62.) Admitting the whole of Fernandez's statements without Fernandez available for cross-examination, does not afford Lane the opportunity to test Fernandez's reliability as called for by the Sixth Amendment. Without being able to cross-examine Fernandez, Lane will not have the opportunity to test Fernandez's

1  reliability.  As to certain substantive statements by Fernandez in the recorded conversations,
2  a limiting instruction may not sufficiently cure the potential for prejudice.

3  Moreover, the Government has not demonstrated that Fernandez is unavailable for trial.
4  Despite allowing an informant's out of court statements admitting to provide context, the Ninth
5  Circuit noted in Whitman that the informant later testified and that the defendant had an
6  opportunity to cross-examine the informant. 771 F.2d at 1352.

7  Accordingly, the Court denies in part the Government's motion to admit Fernandez's
8  statements in the tape-recorded telephone calls without calling Fernandez at trial to make him
9  available for cross-examination. The Government's argument that Fernandez's statements are
10 alternatively admissible as adoptive admissions of Carman is unavailing, as the purported
11 adoptive admission is not being offered against Carman, the party adopting Fernandez's
12 statements. See Fed. R. Evid. 801(d)(2)(B).  Additionally, the record is not clear on whether
13 Carman adopted any particular statement made by Fernandez.

14 The Court is concerned about the potential prejudice to Lane if Fernandez's statements
15 that go beyond context are admitted. The Court will permit the Government to use those
16 statements from Fernandez that are purely for context. The Court will further evaluate whether
17 certain statements in the recorded conversations are not properly classified as contextual. The
18 Court will also evaluate whether certain statements are potentially prejudicial and not able to
19 be cured with a limiting instruction.  Accordingly, the Court orders the parties to meet and
20 confer about the recorded statements and advise the Court as to the statements they agree are
21 purely contextual and those that are inadmissible under Rule 403.

## Conclusion

23 For the reasons set forth above, the Court denies Defendant Lane's motion to suppress
24 Carman's statements, grants the Government's motion to admit Carman's statements, grants
25 the Government's motion to admit emails found on Carman's computers, grants the
26 Government's motion to admit Carman's statements in tape-recorded telephone calls, and
27 grants in part and denies in part the Government's motion to admit Fernandez's statements
28 without Fernandez available for trial.  The Court orders the parties to evaluate Fernandez's

statements to identify those being offered solely for context. The parties are to meet and confer and submit to the Court no later than August 5, 2009 the statements that they agree are purely contextual and those that they continue to dispute their admission in evidence. The Court schedules a hearing on the parties' submission for August 6, 2009 at 9 a.m. in courtroom 13.

**IT IS SO ORDERED.**

DATED: July 27, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT